1-982 Detoil versus HHS. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. Mr. Webb, please proceed. But how else was he to respond to or consider and weigh the evidence? But to do what he did, he just looked at the evidence on both sides and came to a conclusion. That comes to the list of ways I think he required epidemiologic evidence. We believe that if you weigh the absence of an epidemiologic study against the petitioner or against the claimant, you're requiring epidemiologic evidence. Well, I don't see that he weighed against you the absence. He found Dr. Steinman's claims not to be persuasive in light of limitations in Ahmed 1 and Ahmed 2. He said Dr. Steinman's own article suggested the link between pandemrix and narcolepsy was most likely attributed to how H1N1 antigens and pandemrix were prepared and confirmed that different vaccine formulations would have different risks for narcolepsy. And then he also cited the Duffy article, which is the government produced its own evidence, which happened to be an epidemiological study that went against you. But I mean, he's got to weigh all the evidence. And he says, OK, well, they've got a study that says that weighs against you. You've got a guy who's got a theory, but his theory is undermined by some of his own articles, as well as limitations in Ahmed 2 and Ahmed 1. And then the special master found against you. You hadn't successfully proven causation under those circumstances. I don't see how that's requiring you to produce an epidemiological study. I don't see how you can read the opinion that way. Let me see if I can. Obviously, this is a critical question. I thought about it. And it's possible that I read this opinion differently than you folks do. It seems to me it's from reading the special master's opinion that had there not been a Duffy article, we would have had a stronger case. Well, but that's what had there had there not been any evidence on the government side, you would have had a stronger case. Right. I mean, he's weighing a giant pot of evidence. So there's evidence against you and evidence in favor of you, and he's got to come to a conclusion about it. I think that Duffy was a hugely important part of his weighing the evidence. And that's inconsistent with Capizana. What does it mean that to wait? Are you suggesting that the special master doesn't have the right to look at epidemiological evidence and give it weight when it is presented? No. Because that seems to be what you said. Let me explain that. Epidemiologic study, an epidemiologic study that finds a statistically significant association between a vaccine and an injury, is evidence that there is an association and could be inferred to support causation. An epidemiologic study that does not observe a statistically significant association between a vaccine and an injury is not evidence that the vaccine did not cause that injury. It's not evidence that there is not an association. It's an absence of evidence. Hold on. Suppose that I did a study and I set out to try to prove that narcolepsy was in fact linked to the flu mist, which is what your causation theory is. The flu mist caused your client's narcolepsy. So suppose I set out to do a study. Now, I'm an honest scientist, right? So even though my hope is I'm going to find some sort of correlation in the data between people who get the flu mist and then have narcolepsy, suppose that I find zero incidents and I report it. I've done a study of 100,000 people with narcolepsy. None of them were given the flu mist. I've done a study of 100,000 people who took the flu mist and none of them contracted narcolepsy. And so I scientifically report that I'm able to find no correlation between these two. Here's all the data I analyzed. I did this study over several years. I was very careful. You're telling me that that can't be evidence that the special master even considers in assessing whether there is a link between the flu mist and narcolepsy? I'm saying, you know, I must be clear here. This conversation about why epidemiologic evidence means different things if it finds an association, observes an association, and does not observe an association. When a study finds there's no statistically significant increase in narcolepsy by virtue of people taking the flu mist, you can undermine the study by challenging the methodology employed, the number of subjects. But I don't see how you can say that isn't evidence that the government can present to oppose your theory of causation. I don't see how that evidence is irrelevant or deemed improper for the special master to use or rely upon in his decision. It's certainly relevant in response to a study that finds that there was an association. But it isn't relevant. It doesn't. And I'm trying to explain this because it's hard. It's not in the briefs. It's not in the briefs for a reason. I think this is a question probably about, it's a scientific question whether it's appropriate to use epidemiologic evidence as evidence that a vaccine did not cause or cannot cause narcolepsy. I think that's probably a factual question. To be clear, the government never argued, nor did the special master find, that it can't prove narcolepsy. They simply said you had failed to satisfy your burden of a causation theory in light of all of the evidence. I don't believe they used it to disprove any kind of correlation so much as to say in light of the evidence you failed to meet your burden. Would you like to save your rebuttal time? I'm sorry? Would you like to save your rebuttal time? Yes, I do. Okay. Mr. Coleman? Thank you, Your Honor. May it please the Court, Robert Coleman on behalf of the Respondent, Secretary of Health and Human Services. As an initial point, I would like to indicate that Respondent's position was well summarized by Your Honor Judge Moore put forward here during the opening argument and that we second that. However, I would just like to draw the Court's particular attention to It's always useful to have a judge be seconded by a random attorney, but I don't actually know what you're seconding. We had a lot of colloquy over the course of his 14 or 11 minutes or so. What is it that I said that you agree with? Sure. What Respondent agrees with is your summary that is included by the Special Master on page 28 of his appendix where he indicates that Petitioner's expert, which is Dr. Steinman, that his theory of the case is undermined by the OMID 1 and OMID 2 studies which were put forward by Petitioner. That is that it is not simply the inclusion of the H1N1 virus in every flu vaccine that would give rise to a potential increase in narcolepsy. Further, the Special Master here, although he did consider the epidemiologic evidence that was submitted, particularly the Duffy study, that is permissible under this Court's precedent. And the Special Master did go out of his way on page 30 of the appendix to indicate that simply acknowledging an epidemiologic study that shows that there is no particular correlation between a vaccine and injury does not completely disprove that connection, but it is simply evidence that should be considered overall. What was the evidence that you think is the substantial evidence that supports the Special Master's fact-finding in this instance about a lack of proof of causation? The standard of review is simply arbitrary and capricious here, but I believe that in Respondent's position there is... What does arbitrary and capricious mean with regard to fact-finding, I'm trying to think? Well, in this Court's precedent, particularly under the Hines decision, the Court has found that consideration of the relevant evidence and drawing a plausible inferences and providing a rational basis for his decision would entitle the Special Master to be affirmed. So then tell me what evidence establishes that his fact-finding in this case related to causation is not arbitrary and capricious? The Special Master here considered the epidemiologic evidence that was submitted, but submitted all of the other relevant evidence as well, considered the thorough expert reports that were provided by both sides, that was seven total expert reports, and drew plausible inferences therefrom. Did your experts testify that there was no correlation, or that no correlation had been identified, or they hadn't seen evidence of a correlation? What was the precise nature? Because it's hard to prove a negative, right? Absolutely. So what did your experts actually testify about? Our experts indicated in their reports that there was no identified correlation, and that although there is, does appear to be some correlation in some of the evidence between Pandemrix, which is not the vaccine at issue here. And what's the difference between the FluMist and Pandemrix? Pandemrix is a deactivated flu vaccine. Here we're dealing with... Does that mean it's like dead? Yes, that means it's dead. So like it's a dead virus versus a live virus. Right, and here the FluMist vaccine is a live attenuated virus, so it's weakened. So the viral strain is weakened here. But there is something, and this is what the OMAD 1 and 2 studies seem to indicate, which is that there's something about the unique manufacturing process, the deactivation of the virus in that Pandemrix manufacturing process, that appears to give rise to this increased incidence of narcolepsy. So the issue here is that... Just out of curiosity, is it permanent or is it temporary? The narcolepsy? Yeah. I'm not sure if it's permanent. However, the issue here is that Petitioner cannot bridge the gap between Pandemrix and the FluMist vaccine, which is what we're dealing with in this particular instance. As I understand Mr. Webb's argument, he's saying that because the Special Master considered the epidemiologic evidence that was in the record, that in effect places a burden on him to produce a contrary epidemiological study, and that shouldn't be his burden. What's wrong with his argument? Here, the Special Master is permitted to consider the epidemiologic evidence, and that's all the Special Master did here. We agree that the Special Master could not then require Petitioner to demonstrate with their own epidemiologic evidence that they're entitled to compensation. If the Special Master is considering epidemiological evidence submitted by one side, doesn't that sort of place a burden on the other side to match or meet that evidence with contrary evidence? Perhaps with contrary evidence, but not with epidemiologic evidence. And that's the issue here. Petitioner should not be required to submit epidemiologic evidence specifically. And to that point, on page 32 of the appendix, the Special Master indicates that additional evidence could have been submitted, but he does not identify epidemiologic evidence as something that should be offered to rebut the evidence provided by a respondent. And again, this really comes down to a burden issue, and under the Act, it's the petitioner's burden to demonstrate entitlement to compensation. And here, the Special Master found that evidence was simply inadequate to do that. In your view, is there something besides a counterepidemiologic study that would have been enough for the claimant to satisfy its burden? Perhaps. And this, I would draw the Court's attention back to page 32 of the appendix, where Special Master indicates that a study identifying what antibodies are present in individuals who have been vaccinated with the Flumis vaccine could, for instance, be relevant. And that's something that was identified in the Ahmed 1 and 2 studies as well as something that would further the scientific understanding of this particular issue as well. So that's just an example of something that could theoretically have been used. But the primary issue, again, is that the Special Master did not require that epidemiologic evidence to come from the other side. If we all agree that there's no requirement that the claimant submit epidemiological evidence, is there anything that prohibits the Special Master from considering epidemiological evidence? No, there is not. And particularly in this Court's precedent, the Court has indicated that epidemiologic evidence may be considered. And that's something that can be weighed by the Special Master. And the weighing of the factual evidence by the Special Master is not something that this Court would typically second-guess. So that really is within the purview, particularly, of the Special Master. Well, we have several cases saying epidemiological studies are probative and relevant to causation. But are any of those cases, like Lampe and those, were any of those epidemiological studies presented by the government as opposed to epidemiological studies presented by the petitioner? I don't believe so. But I believe that the issue is the same regardless of who submits the evidence. Once the evidence is before the Special Master, the Special Master is to weigh that evidence and determine what its probative value is. And that's something solely within the purview of the Special Master. But in the Grant decision, which is one of the decisions regarding the use of epidemiologic evidence, this Court indicated that that type of evidence is particularly relevant in an instance such as this instance, where there is no direct evidence of actual causation. In such an instance, an epidemiologic study could be particularly informative. And here, the Special Master did consider it and weighed it as probative evidence, but considered it in the grand total of all the other evidence as well. It does seem like the Special Master sure did talk about the Duffy article for an awfully long time. It seems to have carried a lot of weight in the decision, at least as demonstrated by the number of pages spent on it in the causation analysis. Should we be concerned that a study that didn't show a correlation is being given such weight? And maybe we can be concerned, but it doesn't rise to the level of arbitrary and capriciousness, even if we are. I don't know. But what are your thoughts about the amount of weight this Special Master seemed to have given this study? It was certainly considered, and I do agree, it's difficult to identify exactly how much weight is given to the particular study here. Well, he said, second, as the respondent pointed out, the Duffy epidemiological study stood as very strong evidence rebutting an association. Seems like he gave it a lot of weight. He does. I would direct the court back to the grant decision that indicates that in an instance where there is a lack of direct evidence regarding actual causation, that epidemiologic study is to be given particular weight. So I don't believe that he is... And is there maybe something even unique here? Because the petitioner is relying on evidence of a correlation that is found in something not the same, but somewhat related. So is this a case where this epidemiological evidence is even more relevant because it's rebutting something asserted by a correlation being asserted by the petitioner for a different drug? That's correct. I do agree with that. And that's something that Special Master addresses on page 32 of the appendix as well. Okay. Do you have anything further? No, I don't. Thank you very much. Thank you, Mr. Coleman. Mr. Webb has his rebuttal time. I wanted to first say that Special Master acknowledged that a single epidemiologic study can easily miss an association that really is there. And that's exactly why Capozano said we can't require epidemiologic evidence, is that epidemiologic evidence, you really can't expect to find epidemiologic evidence in support of many rare injuries. And that principle applies equally to the, well, you can't give this kind of almost conclusive weight to the single study that in fact studied the question of whether live virus vaccines can cause narcolepsy. There was only one study. It studied only 175,000 persons who received the vaccine. When the Montplaisir study showed that the background rate of, oh, let me get my words mixed up, showed that you needed many more subjects to adequately test the hypothesis that the flu vaccine causes narcolepsy. Which leads me to the second aspect of my appeal, and that's the question of whether it was an abuse of discretion not to hold a hearing in this case. This was a new scientific theory. It was a complex scientific theory, and it was put forward by an expert who had in fact published on this question. And one of the critical points in the special master's decision was that he felt that somehow the, DiCioli's expert opinion, Dr. Steinman's opinion, in this case, was somehow inconsistent with the opinions put forth by the authors of the Ahmed II article, which Dr. Steinman was one of them. And in the context of a new theory, a complex theory, and a theory put forth by a true expert that could answer questions about whether there's inconsistency between his articles and his opinion in the case, it seems inappropriate not to have a hearing. Now, the special masters are overwhelmed with cases, it's true, but that doesn't explain not giving the petitioners or giving DiCioli his day in court when it's apparent from the special master's decision that he did in fact have questions that could have been answered by Dr. Steinman. In other words, the record in this case was underdeveloped, given the novelness, novelty, whatever, and the complexity of the case. And so it is the extreme case, it is the rare case, in which the special master abuses his discretion if he doesn't provide an opportunity for a hearing. Now, I can understand everyone's reluctance to second-guess the special master on the decision of whether or not to have a hearing, because he clearly does have that power, though it is circumscribed. In this case, it was a mistake. I guess the question is, how clear a mistake? The standard for review on abuse of discretion is hard to measure. The real question is whether the language I think is most apropos here is whether there was a clear error of judgment. Was it the kind of mistake, the kind of action that was clearly a mistake, and I think it was. And so I think under the circumstances, you should remand the case to the special master for holding evidence during the hearing. Okay, thank you, Mr. Webb. I thank both counsel for their argument. The case is taken under